Paul T. Trimmer
Nevada Bar No. 9291
**JACKSON LEWIS P.C.**
300 S. Fourth Street, Ste. 900
Las Vegas, Nevada 89101
T: (702) 921-2460
F: (702) 921-2461
paul.trimmer@jacksonlewis.com

John M. Nolan III (pro hac vice in progress)
Three Parkway
1601 Cherry Street, Suite 1350
Philadelphia, PA  19102
T: (267) 319-7802
F: (215) 399-2249
J.Michael.Nolan@jacksonlewis.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| **MARINA DISTRICT DEVELOPMENT COMPANY, LLC d/b/a BORGATA HOTEL CASINO & SPA**, | |
| **Plaintiff,** | **CIVIL ACTION NO.:** |
| v. | |
| **AC OCEAN WALK, LLC d/b/a OCEAN CASINO RESORT**, | **VERIFIED COMPLAINT AND REQUEST FOR INJUNCTIVE RELIEF** |
| **WILLIAM CALLAHAN**, | |
| **KELLY ASHMAN BURKE**, | |
| **Defendants.** | |

## VERIFIED COMPLAINT

Marina District Development Company, LLC d/b/a Borgata Hotel Casino & Spa ("Borgata"), by and through its undersigned counsel, hereby brings this action against Defendant AC Ocean Walk, LLC d/b/a Ocean Casino Resort ("Ocean") and Defendants William Callahan ("Callahan") and Kelly Ashman Burke ("Burke").

As set forth below, Ocean is in the process of raiding Borgata's casino marketing department.  Injunctive relief is necessary because all informal efforts to resolve the dispute and protect Borgata's business from irreparable harm have failed.  The raid began when Ocean hired Burke and Callahan.  Burke, Borgata's former Executive Director of Marketing (a position which gave her unique access intimate knowledge of Borgata's marketing strategies and  customer loyalty databases), was hired at the end of the term of her employment agreement but in violation of her post-employment non-competition and other restrictions.  Ocean solicited away Callahan, Borgata's Vice President of Relationship Marketing, in the middle of his contractual term of employment.  Callahan never returned his Borgata company phone and all of the trade secrets stored therein; even now, he and his counsel have refused to return it.  And, in a transparent ruse to circumvent his non-competition obligations, Ocean gave the career casino marketing executive the title of "SVP of Hotel Operations" despite the fact that during his eighteen years of work at Borgata, he had never overseen hotel operations, never overseen housekeeping, never overseen front desk, bell desk, or janitorial services (all of which are core hotel functions).

Ocean announced its hiring of Callahan and Burke on August 13, 2020.  Since then, it has hired away three more Borgata executives who worked with Callahan and Burke to service Borgata's most valuable casino clients, including Chris O'Connor (Borgata's Director of Casino Credit), Steve Ebner (Borgata's Director of Slots) and Ryan Burch (Borgata's Director of Front Office Operations), as well as Ted Herschel, Borgata's former Vice President of Slots, who while no longer employed is subject to contractual non-solicitation obligations.  The near simultaneous solicitation and hiring of these individuals – all of whom are subject to statutory and common law trade secret restrictions – to work in positions which will require the immediate misuse of those trade secrets and other confidential and proprietary information demonstrates Ocean's intention to

cripple Borgata's casino operation and misappropriate both Borgata's business relationships and its trade secrets and other confidential and proprietary information.

Borgata demanded that Ocean cease and desist its activities last Thursday, August 20, 2020.  Ocean's counsel respondence on Monday, August 24, 2020 and asked for time to respond. Despite the fact that Burke and Callahan's employment clearly and indefensibly violates their agreements with Borgata, Ocean has thus far refused to discontinue their employment, and with respect to Callahan, has repeatedly refused to turn over his Borgata cellular phone and all of the trade secrets and confidential and proprietary information contained on the device.  Immediate injunctive relief is necessary, and because Burke and Callahan's employment agreements vest courts in Nevada with exclusive jurisdiction over any claim relating to or arising out of their employment with Borgata, Borgata has filed its lawsuit in this District.

## **PARTIES**

1.　　Borgata is a New Jersey limited liability company with its principal place of business at 1 Borgata Way, Atlantic City, NJ 08401.

2.　　Borgata is a hotel casino which provides luxury hotel accommodations, luxury spa services, dining, and casino gaming.

3.　　Ocean is a New Jersey corporation with its principal place of business at 500 Boardwalk, Atlantic City, NJ, 08401.

4.　　Ocean is located less than three miles away from Borgata, and like Borgata it is a hotel casino which provides luxury hotel accommodations, luxury spa services, dining, and casino gaming.

5.　　Ocean is a direct competitor to Borgata.

6.　　Defendant William Callahan is an individual and a resident of Ocean City, New Jersey.

7.　　Defendant Kelly Ashman Burke is an individual and a resident of Northfield, New Jersey.

8.　　Ted Herschel, Chris O'Connor, Ryan Burch and Steve Ebner are former Borgata employees who have been solicited to work at Ocean within the last several weeks.  Although not

named as Defendants at this time, their new positions at Ocean appear to require the inevitable disclosure of Borgata's trade secrets and other confidential and proprietary information, and on that basis, this action may be amended to name all four individuals as defendants at an appropriate date.

## JURISDICTION AND VENUE

9.     The Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as Borgata's Defend Trade Secrets Act (18 U.S.C. § 1831, *et seq.*) ("DTSA") and Racketeer Influenced and Corrupt Organizations (18 U.S.C. § 1961, *et seq.*) ("RICO")  claims arise under federal law.

10.     The Court has personal jurisdiction over Callahan and Burke because their employment agreements with Borgata vest courts in Clark County, NV with exclusive jurisdiction over any and all claims arising from their violation of those agreements, including but not limited to the DTSA, RICO, non-competition, non-solicitation and misappropriation claims alleged below.  The Court has personal jurisdiction over Ocean because Callahan and Burke have perpetrated those violations while employed by and acting as agents of Ocean.  Their conduct, which vests this Court with personal jurisdiction, is imputed to their employer, Ocean and vests this Court with personal jurisdiction over Ocean as well.

11.     Venue is proper in the District of Nevada for the same reasons.

12.     Callahan and Burke's employment agreements contain New Jersey choice of law provisions, and on that basis, the allegations in the Complaint are pleaded under federal and/or New Jersey state law.

## FACTUAL ALLEGATIONS

13.     Borgata hired Callahan in 2002, and he worked for Borgata continuously for the next eighteen years, ultimately entering into an employment agreement to work as Borgata's Vice President of Relationship Marketing.

14.     As the Vice President of Relationship Marketing, Callahan oversaw the development and maintenance of Borgata's relationships with its most important casino

customers, including but not limited to casino customers who had "Noir" status in MGM Resorts'
M-Life loyalty program.

15.     At the time of his resignation in July 2020, Callahan had just completed the first
year of a new three-year contract which paid him several hundred thousands of dollars per year
plus bonus[1].  The "Specified Term" of employment began March 20, 2019 through March 19,
2022. *See* Callahan Employment Agreement attached hereto as Exhibit "A".

16.     As set forth in that agreement, the focus of Callahan's job duties was the overall
guest experience for high level guest, included developing relationships with Borgata's potential
and existing clients, securing relationships with existing clients, and acting as a high-level liaison
for Borgata's highest level casino clientele and large corporate patrons.

17.     To that end, Callahan personally oversaw Borgata's highest-level patrons,
including those who spend or gamble $1.5 million to $4 million *per visit* to Borgata and are
collectively responsible for approximately $25 million in revenue to Borgata per year.

18.     Callahan used Borgata corporate resources to develop and enrich close personal
relationships with these patrons, including making the Company's corporate jet available to them,
attending weddings, providing luxury accommodations, attending football and basketball games,
and other social activities.

19.     Callahan also possessed detailed knowledge of the these players' particular
requirements and practices and had knowledge of how Borgata extended credit to these
individuals, when and in what amounts Borgata might discount large losses, the extent to which
Borgata would negotiate and modify certain rules that might affect the outcome of game play, the
assignment of players to Borgata's exclusive "Residence" hotel rooms, which are exclusive suites
not available for cash reservations, and players' amenity and food and beverage preferences, and
other information about the players and their tendencies that Borgata relied upon to provide it
with a competitive advantage in retaining these players during their visits to Atlantic City.

---

[1]  To protect the secrecy of the agreement, we have redacted Callahan's employment agreement
and will make it available for review by the Court.

20.     Callahan communicated with these players directly with the smartphone Borgata provided to him for work purposes. On information and belief – because Callahan has thus far refused to return the phone -- this phone contains the personal cell phone numbers for these players and patrons, as well as text message conversations and other trade secret information about high value players.

21.     Callahan's use of the smartphone was subject to various Borgata policies.

22.     Borgata uses the Mobile/Cellular Device Acceptance Policy provided by MGM Resorts International.

23.     The Policy states that "Team member is responsible to return the device and all supplied accessors (i.e. charger, USB cable, SIM card, headphone) to Information Technology upon request or termination of employment."

24.     The Policy states that "MGMRI is the owner of the device and the team member is the custodian."

25.     The Policy states that "MGMRI reserves the right to monitor or review any and all data and information contained on the team member['s] device, including use of the Internet and email or any other electronic communication, without prior notice."

26.     The Policy states that "Email and internet access are not private. Information that you enter into the device is the property of MGMRI and may be used for any purpose that management determines is appropriate."

27.     Borgata also maintains a Computer Use Agreement, a Computer Use Policy, and a Code of Conduct Policy.  All of these policies state that company smartphones and email systems contain trade secrets and confidential information, are monitored and that employees such as Callahan should not expect privacy.

28.     Anyone in possession of this smartphone is in actual possession of Borgata's highest-tier player and patron list and the means to communicate with them directly.

29.     Upon his resignation, Callahan refused to return the smartphone and is still in possession of the smartphone and all of the communications and player and patron phone

numbers inside it, and all of the players' and patrons' particular needs and requests overseen and handled by Callahan.

30.     This type of knowledge is highly sensitive information in the gaming industry and is the exact type of information that could be used by Borgata's competitors to sway high level players and corporate clientele to patronize their hotels and casinos.

31.     The contents of Borgata's smartphone constitute highly sensitive Borgata trade secrets and they remain within his control.  Borgata instructed Callahan to return the phone on July 17, 2020.  Although he said he would do so, he has not.

32.     Even without the smartphone itself, Callahan has personal and intrinsic knowledge of the particular wants and needs, permissions sought, accommodation preferences, schedules, gaming habits, credit requirements, comp requirements, and staffing preferences for Borgata's highest-level players and top patrons.

33.     Due to Callahan's high-level position with Borgata and inevitable obtainment and development of detailed personal and professional knowledge of Borgata's most valuable clientele, his Employment Agreement contained restrictive covenants, including non-solicitation, confidentiality, and non-competition provisions.

34.     In the Employment Agreement, Callahan specifically acknowledges that he would obtain sensitive information rising to the level of "Confidential Information" in the performance of his job functions:

> Employee acknowledges that, in the course of performing Employee's responsibilities under this Agreement, Employee will form relationships and become acquainted with "Confidential Information" (defined below in Section 22). Employee further acknowledges that such relationships and the Confidential Information are valuable to Employer and the Company, and the restrictions on Employee's future employment contained in this Agreement, if any, are reasonably necessary in order for Employer to remain competitive in Employer's various businesses and to prevent Employee from engaging in unfair competition against Employer after termination of Employee's employment with Employer for any reason.

*See* Exhibit "A", ¶ 8.

35.     Callahan agreed to a non-competition provision in the Employment Agreement:

> Competition. Except as otherwise explicitly provided in Paragraph 10 of this Agreement, during the entire Specified Term and thereafter for the "Restrictive Period" (defined below in Section 22) Employee shall not directly or indirectly be employed by, provide consultation or other services to, engage in, participate in or otherwise be connected in any way with any "Competitor" (defined below in Section 22) in any capacity that is or directs the same, substantially the same or similar to the position or capacity (irrespective of title or department) as that held at any time during Employee's employment with Employer; provided, however, that if Employee remains employed at-will by Employer after expiration of the Specified Term Employee shall not be subject to this Section 8.1 unless (i) Employee is terminated for Employer's Good Cause as determined by Employer  or (ii) Employee resigns his or her position, in which case Employee will remain subject to this Section 8.1 for the remainder of the Restrictive Period.

*See* Exhibit "A", ¶ 8.1.

36.    The Employment Agreement defines the Restrictive Period as "the twelve (12) month period immediately following any separation of employee from active employment for any reason occurring during the Specified Term or the twelve (12) month period immediately following the expiration of the Specific Term." *See* Exhibit "A", p. 16.

37.    Callahan specifically agreed not to work for Borgata's competitors as follows (in relevant part):

> (1)    Any person, corporation, partnership, limited liability company or other entity or any kind, no matter how defined or identified, that is either directly, indirectly or through an affiliated entity, engaged in or proposes to engage in the ownership, operation or management of a gaming establishment that (i) is located anywhere worldwide and will regularly or on occasion accept single hand Baccarat wagers equal to or greater than $25,000 USD or (ii) is located in Macau, Hong Kong, Singapore, Taiwan, Japan, South Korea or within the city limits of Atlantic City, Philadelphia, Boston or Baltimore or within Prince Georges County, Maryland; or

*See* Exhibit "A", p. 14.

38.    Borgata is informed and believes that Callahan began communicating with Ocean at least as early as June 2020, and during that month, it appears that he sought counsel regarding potential methods to circumvent his noncompetition agreement and also communicated with Mark Conboy, a partner in Luxor Capital, the hedge fund which owns and operates Ocean, about accepting employment at Ocean.

39.     On or about July 22, 2020, Mark Donovan, Ocean's Senior Vice President and Chief Marketing Officer left Ocean.   On or about the same date, Ocean hired Callahan, but it appears that Ocean and Callahan conspired together in a transparent attempt to coverup Callahan's breach of the restrictive covenants in his employment agreement with Borgata.   On information and belief, Callahan performs the same functions for Ocean that he performed as Vice President of Relationship Marketing for Borgata, including overseeing and managing Ocean's relationships with high level players – their "guest experience."

40.     Nevertheless, despite the functional equivalency of those job functions, and despite the fact that during an eighteen-year career with Borgata during which Callahan never supervised or oversaw hotel operations, Ocean gave Callahan the title of Senior Vice President of Hotel Operations.

41.     Ocean is indisputably Borgata's direct and primary competitor for high-level casino customers in Atlantic City.

42.     As such, Callahan has breached his Employment Agreement with Borgata and has specifically breached the non-competition provision in his employment agreement.

43.     Callahan's Employment Agreement also contains a confidentiality provision:

> Confidentiality.  In addition to Employee's common law obligations, at all times during Employee's employment with the Company, and at all times thereafter, Employee shall not, without the prior written consent of the Company's Chief Executive Officer, Chief Operating Officer or General Counsel in each and every instance--such consent to be within the Company's sole and absolute discretion--use, disclose or make known to any person, entity or other third party outside of the Company Group any Confidential Information belonging to Company Group or its individual members.

*See* Exhibit "A", ¶ 8.3.

44.     Despite this obligation, Callahan did not return his phone to Borgata when he resigned.   He did not return it on July 20,2020 as promised.   And when Borgata demanded his phone on August 24, 2020, Callahan continued to refuse its return.   Despite Borgata's offer to permit the phone to be delivered directly to a third-party expert forensic examiner to make a

forensic copy which would then be available to the extent appropriate via discovery requests, Ocean's counsel has refused to turn over the phone.

45.     Upon information and belief, Callahan has used, and inevitably will use, the contents of Borgata's smartphone and/or his intrinsic knowledge of Borgata's confidential information and trade secrets in the performance of his job functions for Ocean.

46.     On information and belief, Callahan has disclosed, or will inevitably disclose, Borgata's confidential information and trade secrets in the performance of his job functions for Ocean which are, upon information and belief, the same job functions that Callahan performed for Borgata.

47.     Since Callahan's departure from Borgata and beginning of employment with Ocean, five (5) more of Borgata's employees have left Borgata and become employees of Ocean.

48.     These employees formerly worked closely with Callahan at Borgata and collectively made up a large portion of Borgata's casino marketing and hotel executives.

49.     Upon information and belief, Callahan is responsible for soliciting these individuals to work for Ocean.

50.     By raiding Borgata's casino marketing and hotel executives in a concerted and rapid fashion, it intentionally has sought to disrupt Borgata's casino operations and secure a critical mass of Borgata executives who are all familiar with the same confidential information and trade secrets of Borgata.

51.     Callahan, at the instruction of Ocean, has deliberately targeted and hired these Borgata casino marketing and hotel executives for the purpose of having them use their collective knowledge of Borgata's confidential information and trade secrets to unlawfully compete with Borgata.

52.     The Employment Agreement contains a non-solicitation provision, in which Callahan agreed that "at all times during Employee's employment with [Borgata], and for 12 months thereafter, Employee will not, without the prior written consent of [Borgata]:"

> (c) approach, solicit, contract with or hire any current Business Contacts of Company Group or entice any Business Contact to cease his/her/its relationship with Company Group or end his/her employment with Company Group, without the prior written consent of Company, in each and every instance, such consent to be within Company's sole and absolute discretion.

*See* Exhibit "A", ¶ 8.2(c).

53.     Callahan's solicitation and "poaching" of Borgata's employees is a direct violation of the Employment Agreement's non-solicitation provision.

54.     One former Borgata employee that Callahan solicited to join Ocean is Kelly Ashman Burke.

55.     Burke's employment with Borgata was contractual, with the "Specified Term" of employment from July 19, 2017 through July 18, 2020. *See* Burke Employment Agreement attached hereto as Exhibit "B".

56.     Burke received compensation over one hundred thousand dollars in return for her specific performance under the terms of the Employment Agreement.[2]

57.     Burke was a high-level employee with the job title "Executive Director of Marketing".

58.     Burke's job duties included developing Burke's job duties included devising and executing marketing strategies including advertising, brand development, direct mail, promotional offers, special events and gift giveaways to drive revenues, including use of the Company's M Life database.

59.     Burke has detailed personal and professional knowledge of Borgata's customer database as a result of her job duties for Borgata.

60.     This type of knowledge is highly sensitive information in the gaming industry and is the exact type of information that could be used by Borgata's competitors to influence behavior and motivate customers to patronize their hotels and casinos.

---

[2]  To protect the secrecy of the agreement, we have redacted Burke's employment agreement and will make it available for review by the Court.

61. Due to Burke's high-level position with Borgata, access to and use of Borgata's marketing strategies, customer loyalty programs, and database information, her Employment Agreement contained restrictive covenants, including non-solicitation, confidentiality, and non-competition provisions.

62. The restrictive covenant provisions of Burke's Employment Agreement and Callahan's Employment Agreement are identical.

63. Like Callahan, Burke's Employment Agreement contained a non-competition agreement with a Restrictive Period (following the end of employment with Borgata) of twelve (12) months.

64. Immediately after her employment with Borgata ended on or about July 18, 2020, Burke began employment with Ocean.  Burke acknowledged the applicability of the non-competition provision in post-employment discussions.

65. Nevertheless, Burke accepted her position at Ocean in violation of those restrictions, and upon information and belief, Burke performs the same job functions at Ocean that she performed as Executive Director of Marketing for Borgata.

66. Burke is in direct violation of the non-competition provisions of her Employment Agreement.

67. Burke has disclosed, or will inevitably disclose, Borgata's confidential information in the performance of her job functions for Ocean which are, upon information and belief, the same job functions that Burke performed for Borgata.

68. Other former Borgata employees that Callahan solicited to join Ocean include: (1) Ted Herschel (Borgata's Vice President of Slots); (2) Christopher O'Connor (Borgata's Director of Casino Credit); (3) Stephen Ebner (Borgata's Director of Slots), and; (4) Ryan Burch (Borgata's Director of Hotel Operations).

69. Ocean has willfully and maliciously employed Callahan and Burke despite being aware that Callahan and Burke were prohibited from working for Ocean due to the Employment Agreements.

70.     Ocean has willfully and maliciously employed Ted Herschel despite being aware that Herschel was still bound by the confidentiality and non-solicitation provisions of his Employment Agreement and Severance Agreement with Borgata, which are virtually identical to the confidentiality and non-solicitation provisions of Callahan's Employment Agreement in relevant part.

71.     Ocean has willfully and maliciously employed Christopher O'Connor, Stephen Ebner, and Ryan Birch despite being aware that these former Borgata employees were still bound by New Jersey, federal, and common law from maliciously disclosing their actual and intrinsic knowledge of Borgata's confidential information and trade secrets.

72.     Ocean has willfully and maliciously employed all of these former Borgata employees with job functions virtually identical to their former job duties for Borgata, in which they have or will inevitably disclose Borgata's confidential information in order to benefit Ocean.

73.     Ocean has induced or facilitated Callahan's continuing solicitation of Borgata employees.

74.     Ocean continues to induce or facilitate Callahan and Burke's violation of their Employment Agreements.

75.     Ocean continues to induce and facilitate the use and disclosure of all of the confidential information and trade secrets collectively held by all former Borgata employees named herein for the purposes of leveraging the individual knowledge of each former employee to create a collective group effort to exchange, use, and leverage the confidential information and trade secrets to compete with Borgata.

**COUNT I – Declaratory Judgment**
**(Against All Defendants)**

76.     The allegations set forth in the preceding paragraphs are incorporated herein by reference as though set forth in full.

77.     Borgata and Callahan are parties to enforceable Employment Agreements containing non-competition, confidentiality, and non-solicitation provisions.

78.     Borgata and Burke are parties to an enforceable Employment Agreement containing non-competition, confidentiality, and non-solicitation provisions.

79.     Callahan and Burke have violated the Employment Agreements by seeking and obtaining employment with Ocean while still bound by the twelve (12) month Restrictive Period prohibiting them from doing so.

80.     Callahan violated the Employment Agreement by soliciting Borgata's employees to instead become employed by Ocean, Borgata's direct competitor.

81.     Callahan and Burke have, or inevitably will, disclose Borgata's confidential information while employed by Ocean, in violation of the Employment Agreements.

82.     Ocean has, without privilege or justification, induced or facilitated Callahan and Burke to violate the Employment Agreements.

83.     Ocean has induced or facilitated Callahan and Burke violating the confidentiality provisions of the Employment Agreements.

84.     Ocean has induced or facilitated Callahan to violate the non-solicitation provisions of the Employment Agreement by employing former Borgata employees who Callahan solicited.

85.     Borgata is suffering irreparable harm, the equities tilt in Borgata's favor, and the public interest is served by upholding fundamental tenets of contract law as the Employment Agreements are narrowly tailored to protect Borgata's legitimate business interests.

WHEREFORE, Borgata respectfully requests judgment in its favor and against Callahan and Burke as follows: (1) for an Order declaring and adjudging that Callahan and Burke are in violation of the Employment Agreement; (2) for an Order declaring and adjudging that Callahan and Burke immediately cease their employment with Ocean; (3) for and Order declaring and adjudging that Callahan has violated the non-solicitation provisions of the Employment Agreement; (4) for an Order declaring and adjudging that Callahan and Burke have, or will inevitably, disclose Borgata's confidential information in the performance of their job functions for Ocean; (5) for an Order declaring and adjudging that Ocean has tortiously interfered with the performance of the Employment Agreements; (6) for an Order declaring and adjudging that Ocean has tortiously interfered with Borgata's prospective economic opportunities; (7) for an

order declaring and adjudging in the form of an injunction that Callahan and Burke immediately cease their tortious conduct which continues to cause irreparable injury to Borgata; (8) for such other and further relief as the Court may deem just and proper.

**COUNT II – Breach of Contract**
**(Against Callahan and Burke)**

86.     The allegations set forth in the preceding paragraphs are incorporated herein by reference as though set forth in full.

87.     The Employment Agreements between Borgata and Callahan and Borgata and Burke are valid and binding contracts for which Callahan and Burke received adequate consideration.

88.     The non-competition provisions of the Employment Agreements prohibit Callahan and Burke from seeking employment with Borgata's competitors for a period of twelve (12) months and within Atlantic City.

89.     Callahan and Burke breached the Employment Agreements by accepting employment with Ocean, which is a direct competitor to Borgata.

90.     Callahan breached the non-solicitation provisions of the Employment Agreement by directly soliciting Borgata's employees to cease employment with Borgata and begin employment for Ocean.

91.     Callahan and Burke breached the confidentiality provisions of the Employment Agreements by using their knowledge of Borgata's confidential information to benefit their new employer, Ocean.

WHEREFORE, Borgata respectfully requests judgment in its favor and against Callahan and Burke as follows: (1) for specific performance seeking to enjoin Callahan and Burke from continuing employment with Ocean; (2) for contract reformation, compelling Callahan and Burke to renew the Employment Agreement's Restrictive Period for a period of time equal to that in which they have been in violation of its provisions; (3) for consequential damages flowing from Callahan and Burke's breach of contract; (4) reformation of the Employment Agreements to decrease the consideration paid to Callahan and Burke based on the proportionate amount of

value of the restrictive covenant provisions with which Callahan and Burke have refused to perform, and (4) for such other and further relief as the Court may deem just and proper.

### COUNT III – Tortious Interference
### (Against Callahan and Ocean)

92.     The allegations set forth in the preceding paragraphs are incorporated herein by reference as though set forth in full.

93.     Ocean intentionally and tortiously interfered with Callahan and Burke's performance of the Employment Agreements by soliciting them and employing them in direct contravention of the non-competition provisions of the Employment Agreements.

94.     Ocean encouraged and/or facilitated Callahan and Burke to breach the confidentiality provisions of the Employment Agreements giving them job functions which have or will result in inevitable disclosure of Borgata's confidential information known to Callahan and Burke.

95.     Ocean was not privileged to interfere with Callahan and Burke's performance of the Employment Agreements.

96.     Intentionally, and with reckless disregard for the Employment Agreements, Ocean continues to employ Callahan and Burke for the specific purpose of competing with Borgata and making use of Callahan and Burke's knowledge of Borgata's confidential information.

97.     Ocean's egregious and willful conduct supports an award of punitive damages in this matter.

98.     Callahan, with reckless disregard for the Employment Agreement, solicited at least three (3) Borgata employees to cease their employment with Borgata and instead become employed by Ocean.

99.     One employee Callahan solicited was Burke, who was also bound by the restrictive covenant provision of her Employment Agreement.

100.    By soliciting Burke to become employed by Ocean, he tortiously interfered with Burke's performance of the non-competition provisions of her Employment Agreement.

WHEREFORE, Borgata respectfully requests judgment in its favor and against Callahan and Ocean as follows: (1) for an Order enjoining Ocean from continuing to employ Callahan and Burke; (2) for contract reformation, compelling Callahan and Burke to renew the Employment Agreements for a period of time equal to that in which they have been in violation of its provisions; (3) for actual and consequential damages flowing from Callahan and Ocean's tortious interference; jointly and severally; (4) for an award punitive damages, and; (5) for such other and further relief as the Court may deem just and proper.

**COUNT IV – Unfair Competition**
**(Against All Defendants)**

101.   The allegations set forth in the preceding paragraphs are incorporated herein by reference as though set forth in full.

102.   New Jersey common law protects against unfair competition of former employees to the detriment of their former employer.

103.   By leaving Borgata and going to work for Ocean, a direct competitor, Callahan and Burke have engaged in unfair competition in violation of New Jersey law.

104.   By the nature of their former positions with Borgata, responsibilities, and access to confidential information, Callahan and Burke will continue to compete with Borgata and solicit Borgata employees and clients causing Ocean to gain an unfair competitive advantage, to Borgata's detriment.

105.   Unless restrained, enjoined, and ordered to cease competing against Borgata in violation of the Employment Agreements, Callahan, Burke, and Ocean will continue to engage in unfair competition thereby causing immediate, substantial, and irreparable harm to Borgata.

WHEREFORE Borgata respectfully requests judgment in its favor and against all defendants as follows: (1) for an Order enjoining Ocean from continuing to employ Callahan and Burke; (2) for injunctive relief precluding Ocean from continuing to solicit Borgata employees for the purpose of irreparably harming Borgata's casino operation; (3) for actual and consequential damages flowing from Defendants' tortious acts; jointly and severally; (4) for an award punitive damages, and; (5) for such other and further relief as the Court may deem just and proper.

## COUNT V – Defend Trade Secrets Act, 18 U.S.C. § 1831, *et seq*.
### (Against All Defendants)

106.   The allegations set forth in the preceding paragraphs are incorporated herein by reference as though set forth in full.

107.   Callahan has retained Borgata's smartphone, issued to him in the performance of his job functions for Borgata, following his resignation from Borgata.

108.   The smartphone contains names and phone numbers of Borgata's highest-level players and top ten (10) patrons.

109.   The information, in form and function, contains a customer list of Borgata's highest-level players and patrons.

110.   In addition to names and contact information, the phone contains messages about the individual preferences, accommodations, credit requirements, staffing, gaming preferences, rule preferences, and other individualized information that is the exact kind of information that could be used by a competing casino, like Ocean, to directly compete with Borgata for Borgata's most valuable clientele.

111.   Without the smartphone, Callahan still has intrinsic knowledge of this information that he developed while employed by Borgata for 17 years.

112.   Burke too has similar intrinsic knowledge of Borgata's marking strategy and the way Borgata uses its customer database to drive business.

113.   Ocean, Burke and Callahan have no privilege to use or possess this information for any legitimate purpose.

114.   Borgata took reasonable measures to protect this information, which is not known to the general public, by, among other things, having employees with exposure to Borgata's information and trade secrets (like Callahan and Burke) sign Employment Agreements containing non-competition, confidentiality, and non-solicitation provisions.

115.   Ocean's raid of Borgata's casino marketing and hotel executives was an effort to leverage and further make use of their collective intrinsic knowledge of Borgata's confidential information and trade secrets.

116.   Ocean's efforts and the individual efforts of the former Borgata employees named herein is a conspiracy to misappropriate and use Borgata's trade secrets.

117.   Ocean, Callahan and Burke's misappropriation of Borgata's trade secrets violates the DTSA.

WHEREFORE Borgata respectfully requests judgment in its favor and against all defendants as follows: (1) for an Order enjoining Ocean from continuing to employ Callahan and Burke; (2) for injunctive relief requiring the immediate return of all devices and documents containing trade secrets and other information, including but not limited to Callahan's misappropriated phone; (3) for actual and consequential damages flowing from Callahan, Burke and Ocean's misappropriation of Borgata's trade secrets; (4) for an award punitive damages; (5) for immediate seizure of Borgata's smartphone given to Callahan in the performance of his job functions for Borgata and now used by Callahan and Ocean to compete with Borgata using the trade secrets contained therein, and; (6) for such other and further relief as the Court may deem just and proper.

### COUNT VI – New Jersey Trade Secrets Act, N.J.S.A. § 56:15-1 *et seq.*
### (Against All Defendants)

118.   The allegations set forth in the preceding paragraphs are incorporated herein by reference as though set forth in full.

119.   Callahan has retained Borgata's smartphone, issued to him in the performance of his job functions for Borgata, following his resignation from Borgata.

120.   The smartphone contains names and phone numbers of Borgata's highest-level players and top patrons.

121.   The information, in form and function, contains a customer list of Borgata's highest-level players and top patrons.

122.   In addition to names and contact information, the phone contains messages about the individual preferences, accommodations, credit requirements, staffing, gaming preferences,

rule preferences, and other individualized information that is the exact kind of information that could be used by a competing casino, like Ocean, to directly compete with Borgata for Borgata's most valuable clientele.

123.   Without the smartphone, Callahan still has intrinsic knowledge of this information that he developed while employed by Borgata for 17 years.

124.   Burke too has similar intrinsic knowledge of Borgata's customers, customer databases and marketing strategies.

125.   Ocean, Burke and Callahan have no privilege to use or possess this information for any legitimate purpose.

126.   Borgata took reasonable measures to protect this information, which is not known to the general public, by, among other things, having employees with exposure to Borgata's information and trade secrets (like Callahan and Burke) sign Employment Agreements containing non-competition, confidentiality, and non-solicitation provisions.

127.   Ocean's raid of Borgata's casino marketing and hotel executives was an effort to leverage and further make use of their collective intrinsic knowledge of Borgata's confidential information and trade secrets.

128.   Ocean's efforts and the individual efforts of the former Borgata employees named herein is a conspiracy to misappropriate and use Borgata's trade secrets.

WHEREFORE Borgata respectfully requests judgment in its favor and against all defendants as follows: (1) for an Order enjoining Ocean from continuing to employ Callahan and Burke; (2) for injunctive relief prohibiting misappropriation and requiring the return of all documents and devices containing trade secrets; (3) for actual and consequential damages flowing from Callahan and Ocean's tortious interference; jointly and severally; (4) for an award punitive damages; (5) for immediate seizure of Borgata's smartphone given to Callahan in the performance of his job functions for Borgata and now used by Callahan and Ocean to compete with Borgata using the trade secrets contained therein, and; (6) for such other and further relief as the Court may deem just and proper.

**COUNT VII – Racketeer Influenced and Corrupt Organizations, 18 U.S.C. § 1961, *et seq*.**
**(Against All Defendants)**

129.   The allegations set forth in the preceding paragraphs are incorporated herein by reference as though set forth in full.

130.   Callahan has retained Borgata's smartphone, issued to him in the performance of his job functions for Borgata, following his resignation from Borgata.

131.   The smartphone contains names and phone numbers of Borgata's highest-level players and top patrons.

132.   The information, in form and function, contains a customer list of Borgata's highest-level players and top patrons.

133.   In addition to names and contact information, the phone contains messages about the individual preferences, accommodations, credit requirements, staffing, gaming preferences, rule preferences, and other individualized information that is the exact kind of information that could be used by a competing casino, like Ocean, to directly compete with Borgata for Borgata's most valuable clientele.

134.   Without the smartphone, Callahan still has intrinsic knowledge of this information that he developed while employed by Borgata for 17 years.

135.   Burke too has intrinsic knowledge of Borgata's trade secrets, and her employment in an identical position with Ocean necessitates her misappropriation and misuse of those trade secrets.

136.   Theft of trade secrets is a racketeering activity pursuant to the definition in 18 U.S.C. § 1831, and given Callahan's misappropriation of the phone, his misappropriation of other intrinsic knowledge during his employment with Ocean, and Burke's misappropriation of the same on Ocean's behalf, Defendants have conspired together to commit multiple predicate violations of the DTSA.

137.   Ocean, Burke and Callahan have no privilege to use or possess this information for any legitimate purpose.

138.   Borgata took reasonable measures to protect this information, which is not known to the general public, by, among other things, having employees with exposure to Borgata's information and trade secrets (like Callahan and Burke) sign Employment Agreements containing non-competition, confidentiality, and non-solicitation provisions.

139.   Ocean's raid of Borgata's casino marketing and hotel executives was an effort to leverage and further make use of their collective intrinsic knowledge of Borgata's confidential information and trade secrets.

140.   Ocean's efforts and the individual efforts of the former Borgata employees named herein is a conspiracy to misappropriate and use Borgata's trade secrets.

WHEREFORE Borgata respectfully requests judgment in its favor and against all defendants as follows: (1) for an Order enjoining Ocean from continuing to employ Callahan and Burke; (2) for injunctive relief; (3) for actual and consequential damages flowing from Defendant's action, jointly and severally; (4) for an award punitive damages; (5) for an award of treble damages; (6) for an accounting of all proceeds gained by Ocean as a result of its unlawful activities and the unlawful activities of Callahan, Burke, and former Borgata employees named herein, and; (7) for such other and further relief as the Court may deem just and proper.

WHEREFORE, for each and every Count, Borgata respectfully requests: (1) an award of damages, in an amount to be determined at trial, incurred by Borgata as a result of defendants' unlawful actions; (2) cost and disbursements of this action, including reasonable attorneys' fees, costs, and expenses; (3) pre-trial and post-judgment interest; (4) an accounting and disgorgement of any profits or bonuses earned by Ocean, Callahan, and Burke as a result of their unlawful activities; (5) punitive damages; (6) an order temporarily, preliminarily, and permanently

restraining Ocean from continuing to employ Callahan and Burke and restraining Callahan and Burke from continuing employment with Ocean, and; (7) for such other and further relief as the Court may deem just and proper.

Date: August 27th, 2020

Respectfully submitted,

**JACKSON LEWIS, P.C.**


_____/s/ Paul T. Trimmer_____
Paul T. Trimmer
Nevada Bar No. 9291
300 S. Fourth Street, Ste. 900
Las Vegas, Nevada 89101
T: (702) 921-2460
F: (702) 921-2461
paul.trimmer@jacksonlewis.com

John M. Nolan III (pro hac vice in progress)
Three Parkway
1601 Cherry Street, Suite 1350
Philadelphia, PA  19102
T: (267) 319-7802
F: (215) 399-2249
J.Michael.Nolan@jacksonlewis.com

*Attorneys for Plaintiff*

## **VERIFICATION**

I, Hugh Turner, am Borgata's Senior Vice President and Chief Financial Officer.  I certify and declare that I have read the foregoing Verified Complaint and Request for Injunctive Relief and know its contents and allegations.  I am informed and believe and on that ground allege that the matters stated in the document described above are true.  I am authorized to make this verification for and on Borgata's behalf, and I make this verification for that reason.

I declare under penalty of perjury under 28 U.S.C. § 1746, that the foregoing is true and correct.

EXECUTED this 27th day of August, 2020.


_____*/s/ Hugh Turner*_____
HUGH TURNER