**REID RUBINSTEIN & BOGATZ**
I. SCOTT BOGATZ, ESQ.
Nevada Bar No. 3367
KERRY E. KLEIMAN, ESQ.
Nevada Bar No. 14071
300 South 4th Street, Suite 830
Las Vegas, Nevada 89101
Telephone: (702) 776-7000
Facsimile: (702) 776-7900
sbogatz@rrblf.com
kkleiman@rrblf.com

**BLANK ROME LLP**
LEIGH ANN BUZIAK, ESQ. (*Pro Hac Vice*)
CHARLES S. MARION, ESQ. (*Pro Hac Vice forthcoming*)
JEREMY N. KOLMAN, ESQ. (*Pro Hac Vice*)
MICHAEL A. STOOLMAN, ESQ. (*Pro Hac Vice*)
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
Telephone: 215.569.5500
Facsimile: 215.569.5555
lbuziak@BlankRome.com
cmarion@BlankRome.com
jkolman@BlankRome.com
mstoolman@BlankRome.com

*Attorneys for Defendant*
*AC Ocean Walk, LLC, William Callahan, and*
*Kelly Ashman Burke*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MARINA DISTRICT DEVELOPMENT COMPANY, LLC d/b/a BORGATA HOTEL CASINO & SPA,<br><br>Plaintiff,<br><br>v.<br><br>AC OCEAN WALK, LLC d/b/a OCEAN CASINO RESORT; WILLIAM CALLAHAN; KELLY ASHMAN BURKE,<br><br>Defendants. | Case No. 2:20-cv-01592-GMN-BNW<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S EMERGECNY MOTION FOR SANCTIONS [ECF NOS. 48 & 49]** |

1

Defendants AC Ocean Walk, LLC d/b/a Ocean Casino Resort ("Ocean"), William Callahan ("Callahan"), and Kelly Ashman Burke ("Burke") (collectively "Defendants"), by and through their undersigned counsel, hereby opposes Plaintiff's Emergency Motion for Sanctions (ECF Nos. 48 &  49). This motion is made based upon the following memorandum of points and authorities, all other papers and pleadings on file in this matter, and any oral argument allowed by the Court.

DATED:  September 18, 2020

By:   /s/ Kerry E. Kleiman
I. Scott Bogatz, Esq.
Nevada Bar No. 3367
Kerry E. Kleiman, Esq.
Nevada Bar No. 14071
**REID RUBINSTEIN & BOGATZ**
300 South 4th Street, Suite 830
Las Vegas, Nevada 89101

Leigh Ann Buziak, Esq. (*Pro Hac Vice*)
Charles S. Marion, Esq.
(*Pro Hac Vice forthcoming*)
Jeremy N. Kolman, Esq. (*Pro Hac Vice*)
Michael A. Stoolman, Esq.(*Pro Hac Vice*)
**BLANK ROME LLP**
One Logan Square
130 North 18th Street
Philadelphia, PA 19103

*Attorneys for Defendants*
*AC Ocean Walk, LLC, Burke, and Callahan*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiff Marina District Development Company, LLC d/b/a Borgata Hotel Casino & Spa's ("Plaintiff" or "Borgata") "Emergency Motions for Sanctions" (the "Sanctions Motion") should be denied.  A tactical and desperate attempt to hide significant evidence undermining a key allegation in its Complaint and accompanying motions seeking emergency and preliminary injunctive relief, the Sanctions Motion relies upon unfounded and scurrilous accusations against Defendants' lead counsel, mischaracterizes the underlying facts, and misstates the applicable law.

To be clear and unequivocal, Defendants' counsel, Leigh Ann Buziak ("Ms. Buziak"), acted in accordance with her ethical obligations and with both Nevada and Ninth Circuit law when she communicated with Plaintiff's employee, Jason Lyons ("Mr. Lyons") – a fact witness with crucial information about one of the linchpin allegations of Plaintiff's Complaint (*i.e.,* Defendant William Callahan's allegedly improper retention of his Borgata-issued cell phone) and the bases for Plaintiff's request for preliminary injunctive relief.  Simply put, Plaintiff has not met and cannot meet its heavy burden in proving its right to the extraordinary relief of quashing of key evidence, disqualifying defense counsel and/or preventing Defendants from taking any discovery even while Plaintiff is permitted to do so:[1]

- Borgata has not established that Mr. Lyons was a "managing-speaking agent" within the company's "control group" either for management of the company itself, for this litigation, or for the limited issues addressed by his Declaration – not that Ms. Buziak had *any reason* to believe that he was.

- Before having even her brief and limited communications with Mr. Lyons, Ms. Buziak informed him that she represented Defendants and confirmed that he was not represented by counsel.

- Ms. Buziak did not misstate or misrepresent *anything* to Mr. Lyons, nor did she improperly coerce or otherwise pressure him – in their very brief communications – to do anything.

- Ms. Buziak's factual investigation of the information in Mr. Lyons' – or *any* fact witnesses' possession – is permissible under Nevada Rules of Professional Conduct 4.2 *and* Federal Rule of Civil Procedure 26.  Indeed, the obligations of Federal Rule of Civil Procedure 11 *require* counsel to conduct such investigations to establish a good faith basis for the arguments they advance on behalf of their clients.

Finally, *even if* there was the slightest question of whether Ms. Buziak acted properly – *and there is not* – the extraordinary relief requested by Plaintiff should be denied:  There simply is no justification for quashing evidence that directly contradicts Plaintiff's story about Mr. Callahan's cell phone, much less disqualification of Defendants' chosen lead counsel.

---

[1] Plaintiff asks the Court to strike the Declaration Defendants obtained from Lyons and filed as an exhibit to their opposition to Plaintiff's Motion for Preliminary Injunction (ECF No. 40-2) and disqualify Defendants' lead counsel. As an alternative to disqualification, Plaintiff requests that the Court deny Defendants' Emergency Motion for Expedited Discovery (ECF Nos. 32, 33, 34 and 35).

1    Accordingly, Plaintiff's Emergency Motion for Sanctions must be denied in its entirety, and

2    Plaintiff's Motion and supporting declarations should be stricken from the record.

3    **II.    PROCEDURAL AND FACTUAL BACKGROUND**

4           Plaintiff commenced this action on August 27, 2020 with the filing of its Complaint as well

5    as its Motions for a Temporary Restraining Order and Preliminary Injunction.   Since then,

6    Defendants have been forced to respond on an urgent, expedited basis – directed to make two

7    witnesses available for deposition in advance of the hearing on the Motion for Preliminary

8    Injunction, while also trying, unsuccessfully, to take key discovery from Plaintiff necessary to

9    oppose that very Motion.  For instance, Plaintiff refused to make its own declarants available for

10   depositions, and summarily rejected Defendant's proposed comprehensive discovery plan.  *See*

11   ECF Nos. 32, 33, 34 and 35. As a result, Defendants were forced to file their own emergency

12   motion for expedited discovery to obtain the evidence Defendants need – and are entitled to – for

13   presenting their defense at the hearing.  *Id.*

14          A central allegation in Plaintiff's Complaint, and a central basis for its Motion for

15   Preliminary Injunction, involves Mr. Callahan's Borgata-issued cell phone.  More specifically,

16   Plaintiff claims that Mr. Callahan's retention of that phone, following his resignation, was

17   improper. Plaintiff submitted a Declaration from its President and Chief Operating Officer,

18   Melonie Johnson ("Ms. Johnson") in support of this argument.  However, Defendants contend that

19   Defendant Kelly Ashman Burke (who was still employed by Plaintiff at the time) specifically

20   asked Ms. Johnson about that phone in a meeting attended by several Borgata employees,

21   including Mr. Lyons – and Ms. Johnson responded that Callahan could keep his company-issued

22   phone.  Thus, the question of whether Mr. Callahan's retention of the phone was reasonable *and*

23   *does not support an inference of improper use of confidential information* is central to Plaintiff's

24   justification for emergency injunctive relief.

25          Earlier this week, at 9:07 pm EDT on September 15, 2020 -- the evening Defendants were

26   required to file their Opposition to Plaintiff's Motion for Preliminary Injunction – Ms. Buziak

27   called Mr. Lyons, but did not initially reach him by phone. Declaration of Leigh Ann Buziak

28   ("Buziak Decl.") at ¶ 3.   She followed up with a short text message a minute later: "Hi Jason –

this is Leigh Ann Buziak.  I'm Bill Callahan's lawyer.  Could you give me a quick call?  Many thanks." *Id.* at ¶ 4.  Four minutes after that, at 9:12, Mr. Lyons called Ms. Buziak back.  Their initial phone conversation lasted a little over 2 minutes. *Id.* at ¶ 5.  Ms. Buziak explained her role in the case and warned him that because she represented Mr. Callahan and not Mr. Lyons, their conversation was not privileged. *Id.* at ¶ 6.  Further, Ms. Buziak told Mr. Lyons that if his employer asked him questions about their communications, he would have to answer those questions fully and truthfully and that he would have to tell his employer everything he could recall about the conversations they had. *Id.* at ¶ 7. Ms. Buziak also cautioned him of the consequences he may face from his employer for providing a declaration and that he should consider the impact of the decision on his family and livelihood, and not just helping Mr. Callahan. *Id.* ¶ 8. Ms. Buziak asked Mr. Lyons if he was represented by counsel, and while asking whether he should be and Ms. Buziak answering it might be smart to do so, Mr. Lyons said he was not. *Id.* ¶ 10.  Mr. Lyons told Ms. Buziak that he would call her back in 20 minutes.  *Id.* at ¶ 11.  Ms. Buziak told him he need not call her back in 20 minutes (or even that same night), that she understood it was a big decision, and that he should not rush. *Id.* ¶ 12.

At 9:27 pm EDT, Mr. Lyons called Ms. Buziak back and they discussed what Ms. Johnson said about Mr. Callahan's phone and whether he could recall personally telling Mr. Callahan what had occurred at the meeting with Ms. Johnson. *Id.* ¶ 15. Ms. Buziak edited the declaration to conform with Mr. Lyons' statements and read and re-read the text to him as she did so.  *Id.* at ¶¶ 16-18. That conversation lasted 7 minutes and 37 seconds.  *Id.* at ¶ 19.   At 9:44 pm EDT – ten minutes after their second conversation had ended – Mr. Lyons texted Ms. Buziak's cell phone: "Not received yet." *Id.* at ¶ 20. A minute later, Ms. Buziak emailed the Declaration to him. *Id.* at ¶ 21.   The cover email made clear that the Declaration would be filed with the Court: "Good evening Jason: please see attached and note that ***the phone numbers will be redacted in public filings and will not be published***."  *Id.* at ¶ 22 (emphasis added).  Twelve minutes after that, at 9:56 pm EDT, Mr. Lyons texted Ms. Buziak a photograph of the signature page asking "Sufficient?"  *Id.* at ¶ 25. Two minutes later, Mr. Lyons sent Ms. Buziak an email stating "Sent photo to your phone!" *Id.* at ¶ 26.

The Declaration was in fact filed with Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction**.** (ECF No. 40-2). As reflected in the Declaration, Mr. Lyons directly contradicts Ms. Johnson's testimony about letting Mr. Callahan keep his phone. ECF No. 40-2 at ¶ 3. Buziak did not, as Plaintiff alleges, ever tell Mr. Lyons, or threaten, that he would be "subpoenaed" if he did not provide the declaration she requested; indeed, she did not even use the word "subpoena" in their conversation. Buziak Decl. at ¶ 27. Moreover, such conduct would be inconsistent with her own practice, principles, and personal ethics. *Id.*

Plaintiff now alleges in its Emergency Motion that the very simple and straightforward four-paragraph Declaration that Lyons approved, reviewed, signed, and enthusiastically returned "did not accurately reflect his recollection of the events addressed therein." Plaintiff's Motion at 5. Plaintiff offers a second declaration from Mr. Lyons, this one five pages and fourteen paragraphs long, in which he says he needs to "supplement" – not "correct" or retract or rescind – his prior Declaration "when it is appropriate."[2] ECF No. 49-1 at ¶12. The latest statement from Mr. Lyons is most striking in what it does *not* say:  that he was wrong when he made his original clear, unambiguous and unequivocal statement that Ms. Johnson said Mr. Callahan could retain his company-issued phone. He could have easily retracted his prior statement on this point, *but did not do so.*

### III.    <u>LEGAL ARGUMENT</u>

As Plaintiff acknowledges, Plaintiff has the burden to establish that an ethical violation occurred and that sanctions are justified. *See Rebel Comm'ns., LLC v. Virgin Valley Water Dist*., No. 2:10–cv–00513–LRH–GWF, 2011 WL 677308, at *5 (D. Nev. Feb. 15, 2011) (finding that an attorney's communications with a witness did not violate Rule 4.2 and denying motion to disqualify). Moreover, "'particularly strict judicial scrutiny' should be given to a motion to

---

[2] Accusing a lawyer of violating her ethical responsibilities is the appropriate time to tell the complete truth about these circumstances, as Ms. Buziak is doing in her Declaration. The fact that Mr. Lyons cannot correct the statement now suggests that the Borgata did not give him the time and care to review his second Declaration as Ms. Buziak did with his first. It is unclear why it would not be possible for Mr. Lyons to fully recall the events of one conversation at one meeting particularly when, in his second declaration, he testifies that "my memory was sharper after a night's sleep." Lyons Decl., ¶ 12. If that were the case, Mr. Lyons should have been able to correct his declaration with no problem and in short order. Waiting for Mr. Lyons' eventual deposition makes no sense while this event is clearly fresh in his mind.

disqualify opposing counsel because there is a significant possibility of abuse for tactical advantage." *Id.* (citation omitted). This Court has further cautioned that, "courts must prevent parties from misusing motions for disqualification as 'instruments of harassment or delay.'" *Id,* (citing *In-N-Out Burger v. In & Out Tire & Auto, Inc.*, No. 2:07–cv–01556–LRH–LRL, 2008 WL 2937294, at *3 (D. Nev. July 24, 2008) (declining to disqualify counsel)). This Court therefore approaches the issue of whether to disqualify opposing counsel as "a drastic measure which courts should hesitate to impose except when absolutely necessary." *Id*.

Plaintiff takes issue with Ms. Buziak's communications with Mr. Lyons on multiple grounds, all of them baseless. First, Ms. Buziak's contact with Mr. Lyons was proper and not barred by either Nevada Rule of Professional Conduct 4.2 or Federal Rule of Civil Procedure 26. Further, Ms. Buziak was transparent with Mr. Lyons about her role and the use of the Declaration. Finally, she made *no* misrepresentations or threats to Mr. Lyons. In short, Plaintiff's Motion for Sanctions represents exactly the sort of abuse for tactical advantage, harassment and delay that so concerned the court in *Rebel*.

### A.  Ms. Buziak Was Permitted to Communicate With Mr. Lyons.

The Nevada Supreme Court has concluded that "the United States Supreme Court's reasoning in *Upjohn*, while explicitly addressing only the attorney-client privilege, applies with equal force to the no-contact rule," noting that the purpose of the no-contact rule is "to protect the attorney-client relationship, not to protect an organization from the discovery of adverse facts" *Palmer v. Pioneer Inn Assocs., Ltd.*, 118 Nev. 943, 960, 59 P.3d 1237, 1248 (2002) (*citing Upjohn Co. v. United States*, 449 U.S. 383, 66 L. Ed. 2d 584, 101 S. Ct. 677 (1981)).

Here, the reality is that Plaintiff's Sanctions Motion is brought because Defendants discovered and have brought to light facts that are not only adverse but devastating to Plaintiff's claims against Mr. Callahan. That is not a valid basis for the motion, and it should be denied.

> **1.  Plaintiff has failed to establish that Mr. Lyons was a "managing-speaking agent" of the organization who could not be contacted by opposing counsel under Nevada Rule of Professional Conduct 4.2.**

Plaintiff's Sanctions Motion tellingly does not address the central element of its claim that Ms. Buziak was prohibited from contacting Mr. Lyons: To establish a violation of Rule 4.2,

Plaintiff must show not only that Mr. Lyons is an employee, not only his title, but that he is a "managing-speaking agent" for the litigation.  Plaintiff has not done so.

It is axiomatic that Rule 4.2 does not bar attorneys from communicating with all employees of an entity party.  *See Palmer v. Pioneer Inn Associates, Ltd.*, 59 P.3d 1237 (Nev. 2002) (rejecting a "blanket test" and "party-opponent admission test" that would "cover[] all or almost all employees").  Further, attorneys may communicate with a party's employee even if the information provided by that employee will be adverse to the employer, and could be considered to be "a party-opponent admission":

> [W]e specifically note that an employee does not 'speak for' the organization simply because his or her statement may be admissible as a party-opponent admission.  Rather, the inquiry is whether the employee can bind the organization with his or her statement.  Also, an employee for whom counsel has not been retained does not become a 'represented party' simply because his or her conduct may be imputed to the organization . . . .

*Palmer,* 59 P.3d at 1248.  As the *Palmer* court further explained, Rule 4.2 does not prohibit an attorney from contacting a corporate employee when the "employee could make a statement concerning a matter within the scope of his or her employment, which would then be admissible under FRE 801(d)(2)(D) or a state equivalent."  *Palmer*, 59 P.3d at 1248-49 (Nev. 2002).  The fact that testimony may be unhelpful to the employer does not matter: "[T]he purpose of [the rule] is to protect the attorney-client relationship, not to protect an organization from the discovery of adverse facts".  *Id.* at 1248; *see also, Palmer v. Pioneer Inn Associates, Ltd.*, 338 F.3d 981, 988 (9th Cir. 2003) ("The managing-speaking agent rule is not intended to shield [a company] from the effects of the 'prejudicial facts' in [an employee's] possession."). [3]

Rather, Rule 4.2 bars communication only with "those employees who have the legal authority to 'bind' the corporation in a legal evidentiary sense, *i.e.,* those employees who have 'speaking authority' for the corporation."  *Palmer,* 59 P.3d at 1248 (responding to certified question from Ninth Circuit that, under Nevada law, the "managing-speaking agent test"

---

[3] Inexplicably, to support its claim of a Rule 4.2 violation, Plaintiff cites the **earlier** *Palmer* district court decision that the Ninth Circuit later reversed.  *See* Plaintiff's Motion at 10 (citing *Palmer v. Pioneer Hotel & Casino*, 19 F. Supp. 2d 1157, 1165 (D. Nev. 1998)).  Plaintiff's Motion fails to note that reversal.

determines which corporate employees are covered by Rule 4.2); *see also Palmer v. Pioneer Inn Associates, Ltd.*, 338 F.3d 981 (9th Cir. 2003) (conforming to response to certified question); *Kelly v. CSE Safeguard Insurance Co.*, 2:08-cv-00088-KJD-RJJ, 2009 WL 10692846 (D. Nev. Sept. 30, 2009) (describing test and declining to disqualify counsel); Nev. Formal Ethics Op. 27 (iss. Sept. 10, 2001; rev. and reiss. May 25, 2005 and Sept. 2019) (also describing same "managing-speaking agent" test to be applied).

Plaintiff's Motion and accompanying declarations fail to establish that Mr. Lyons has "speaking authority," or is a "managing-speaking agent,"[4] for Borgata on the subject of his declaration, or indeed any aspect of this litigation. Plaintiff does not (and cannot) assert that Mr. Lyons, as Vice President of "Relationship Marketing" has the authority to bind Plaintiff on the employment/human resources-related question of whether an employee who is resigning from the Borgata will be permitted to keep or has to return his company-issued phone. Indeed, in his most recent declaration, filed by Plaintiff in support of its Emergency Motion, Lyons states that, in his position, he has "authority over relationship marketing matters and casino matters" (ECF No. 49-1 at ¶ 13). In fact, Plaintiff does not claim that Lyons has the authority to bind Borgata on the matters addressed in his September 15 declaration (ECF No. 40-2). Plaintiff only asserts in a conclusory and vague manner that Lyons is "a managing agent with authority over material facts and matters in this case," "one of three highest-ranking casino executives with responsibility for Plaintiff's relationships with its current and prospective casino customers" who has "authority to bind Plaintiff **as to those matters within realm of his position and duties**". Plaintiff's Motion at 2, 3, 6 (emphasis added).

Lyons admits he has no involvement in the litigation. He declares "[a]lthough I am familiar with the fact that Borgata is in litigation with Callahan, I am not frequently involved in such matters and I assumed that if she was contacting me, she had a right to do so." ECF No. 49-1, Lyons Decl. ¶ 5. His ignorance shows that he is both absent from any decision making in the case, but also that

---

[4] Interestingly, while the Nevada courts and the State Bar of Nevada have expressly held that the "managing-speaking agent" test is the standard for determining whether opposing counsel can communicate with an employee of another party *ex parte*, Plaintiff's Motion is completely devoid of any mention of Lyons being a "managing-speaking agent" of Borgata.

he may not have been interviewed by Borgata's counsel or given any instruction by Borgata's counsel on how to respond to communications regarding the case. Plaintiff submitted the Declaration of Melonie Johnson in support of its Motion for TRO and it would have been surprising if Borgata were able to make full and accurate representations about the meeting having not interviewed all fact witnesses at the meeting. In light of this and Lyons' own admission, Lyons' status cannot be that of managing-speaking agent of Borgata.

Because Mr. Lyons is not a managing-speaking agent of Borgata, it was completely appropriate and ethical for Ms. Buziak to contact him to investigate and try to confirm the accuracy of certain of the key allegations (relating to a matter over which Mr. Lyons does *not* have managing-speaking authority at Borgata) in this matter.  Furthermore, Ms. Buziak only – and also properly and ethically – sought factual, non-privileged information from Mr. Lyons about Ms. Johnson's statements to multiple Borgata employees.  Mr. Lyons' description of Ms. Johnson's statements is simply a fact subject to proof or disproof, exactly the type of evidence that the managing-speaking agent test permits an attorney to collect from employees of a corporate party: *Palmer*, 59 P.3d at 1248 ("It is not the purpose of the rule to protect a corporate party from the revelation of prejudicial facts.  Rather, the rule's function is to preclude the interviewing of those corporate employees who have the authority to *bind* the corporation.") (emphasis in original) (quoting *Wright by Wright v. Group Health Hospital*, 103 Wash.2d 192, 691 P.2d 564, 569 (Wash. 1984)).

Indeed, *Palmer* itself is directly on point.  That case *also* involved an attorney's communication with a corporate supervisor employed by an opponent who had witnessed a conversation between another supervisor and the opposing party.  *Palmer*, 59 P.3d at 1248.  The Ninth Circuit found that Rule 4.2 *permitted* the attorney's communication, and declined to disqualify or otherwise sanction the attorney.  *See Palmer*, 338 F.3d at 988 ("we reverse the district court's grant of sanctions—both the exclusion of the affidavit and the imposition of monetary sanctions"). Similarly, Ms. Buziak's contact of Mr. Lyons was entirely appropriate under Rule 4.2.

**2.  Ms. Buziak is permitted to conduct a factual investigation, including contacting witnesses, to respond to Plaintiffs' Complaint and Motion for Preliminary Injunction.**

Plaintiff also contends that any contact of Mr. Lyons (or presumably any witness, whether a "managing-speaking agent" of Borgata or not) was improper premature discovery in violation of Federal Rule of Civil Procedure. But Rule 26(d) limits only *formal* discovery; it allows parties to interview witnesses and conduct informal investigations *before* a Rule 26(f) conference.  *See* Rule 26 Adv. Comm. Note (1993) (Rule 26(d) "is revised to provide that formal discovery – ***as distinguished from interviews of potential witnesses and other informal discovery*** – not commence until the parties have met and conferred as required by subdivision (f)"); *cf.* Fed. R. Civ. P. 26(a)(5) (identifying formal methods by which "[p]arties may obtain discovery") (emphasis added).  In short, *informal* factual investigations are permitted – in fact, under Rule 11, *required* for counsel to be assured they have confirmed a good faith basis for making factual assertion, or advancing legal arguments, on behalf of their clients.  Furthermore, in adopting the managing-speaking agent test, courts in this jurisdiction have recognized the importance of allowing informal investigation by attorneys.  *See Palmer*, 59 P.3d at 1245.  This is true in light of Rule 11 even *pre-litigation*, let alone before a Rule 26(f) conference.  *Id.* at 1240-41 (recognizing that adopting and applying the narrower "managing-speaking agent" test "affords a reasonable opportunity for pre-litigation investigation under Rule 11"); *see also id*. at 1248 (Rule 4.2 "should not protect the organization at the expense of the justice system's truth-finding function").

Thus, both Rule 4.2 and the Rules of Civil Procedure encourage the type of investigation engaged in by Defendants' counsel.  "[T]he rules of civil procedure, especially the discovery rules, are designed to afford parties broad access to information, and informal interviews are a cost-effective way of gathering facts, as opposed to more expensive depositions, which preserve facts." *Palmer*, 59 P.3d at 1243; Nev. Formal Ethics Op. 27 (iss. Sept. 10, 2001; rev. and reiss. May 25, 2005 and Sept. 2019) ("The approach of the Nevada Supreme Court in [*Palmer*] strikes a balance allowing informal and inexpensive discovery while providing a represented party with the advice and protection of counsel").

The importance of such informal factual investigation is easily apparent in a case such as this one, where Defendants have been required to respond on an expedited basis to Plaintiff's Motions for TRO and Preliminary Injunction, and they also need to prepare for the evidentiary

hearing on Plaintiff's motion all while Plaintiff *refuses to participate in discovery.* Here, Defendants conducted an entirely appropriate – and necessary – factual investigation in order to be able to respond to and argue in opposition to Plaintiff's Preliminary Injunction Motion. Ms. Buziak's communication with Mr. Lyons was a permissible means of investigating the relevant facts in dispute in this matter.

**B.** **Ms. Buziak's Communications With Mr. Lyons Were in Keeping With Her Ethical Obligations.**

Although Plaintiff implies that Ms. Buziak also acted improperly in *how* she communicated with Mr. Lyons, it fails to establish any actual misconduct. From her very first text communication with Mr. Lyons, Ms. Buziak identified herself as Mr. Callahan's attorney. Buziak Decl. at ¶ 4. Plaintiff acknowledges in its Motion that Ms. Buziak truthfully identified herself and her role as Mr. Callahan's attorney, that she asked if Lyons was represented by counsel, and that she straightforwardly "requested that he sign a declaration regarding "a conversation that took place with Melonie Johnson, Borgata's President, regarding Callahan's phone." (ECF Nos. 48-49 at 4). Plaintiff further admits that Mr. Lyons elected to call Ms. Buziak back after she left a message for him, that he ended their first conversation when he wanted to, and that he called Ms. Buziak back a second time on his own initiative. *Id.* Plaintiff does not claim (because it cannot) that Ms. Buziak sought or obtained any privileged information in her conversation with Mr. Lyons. *Id.*

Despite this, Plaintiff attempts to create a fire out of smoke, pointing to Ms. Buziak purportedly telling Mr. Lyons that "she needed the signed declaration as soon as possible," that he was "uncomfortable" or felt "concern," and a claim – which Ms. Buziak unequivocally disputes – that he would receive a subpoena if he declined to provide a Declaration. But none of this supports a claim of unethical conduct.

**First,** as the Court is well aware, Defendant *did* have an urgent need to gather factual information "as soon as possible" – they have been under extreme pressure and time sensitivity to respond to Plaintiff's Motion for Preliminary Injunction, and were due to file their opposition to the Motion for Preliminary Injunction that very night. **Second,** even if Mr. Lyons was "uncomfortable with the conversation" (ECF Nos. 48-49 at 4), Plaintiff offers no evidence that his

1  discomfort was caused by any wrongful conduct on Ms. Buziak's part (rather than, perhaps, his

2  discomfort at providing truthful testimony that might harm his employer), much less that he even

3  communicated any such "discomfort" to her.  **Third**, Plaintiff does not establish how Mr. Lyons'

4  purported "concern . . . that he was obligated to comply" was based on any misrepresentation or

5  misconduct by Ms. Buziak.  For instance, Plaintiff does not claim – nor does Mr. Lyons in his

6  second declaration -- that Ms. Buziak told Lyons that he was *required* to provide a declaration or

7  any other information.  As the allegations in the Motion recognize and the attached declaration

8  from Buziak confirms, at no time did Buziak tell Lyons that he was required to provide a

9  declaration, or to take any other action.  Buziak Decl. at ¶¶ 7-8, 12.  To the contrary, he provided

10  the declaration of his own volition.  Plaintiff's Motion instead claims that Lyons' "concern" arose

11  from Ms. Buziak's offer to facilitate delivery of the declaration – that offer cannot reasonably be

12  construed to be a statement or representation by Defendants' counsel as to Lyons' *obligations*.[5]

13      **Finally**, Plaintiff contends that Ms. Buziak told Mr. Lyons "that if he did not sign the

14  declaration, she would issue a subpoena to him."  To be clear, Ms. Buziak did *not* in fact make

15  such a statement, nor did she ever mention the word "subpoena" at any time in her conversations

16  with Mr. Lyons.  Buziak Decl. at ¶ 27.  However, ***even if she had***, that statement would have been

17  a straightforward and truthful statement of intent to conduct discovery necessitated by Plaintiff's

18  claims against the Defendants. It would not have been a false, coercive, or otherwise improper

19  statement. ECF Nos. 48-49 at 4; *see also* 9/16/20 Lyons Decl. (ECF No. 49-1) at ¶ 6 ("She advised

20  me that if I did not sign the declaration, that subpoenas may be involved").

21      In sum, there was *no* coercion or harassment. Ms.  Buziak complied with her obligations

22  under Rule 4.2, and under the Rules of Professional Conduct more generally, in all respects.[6]

23

24  [5] According to Ms. Buziak, she and Mr. Lyons dismissed sending a courier as a crazy idea given the late hour of the evening and, instead, Mr. Lyons texted a photo of the signed declaration for filing. Buziak Decl. ¶¶ 24-25.

25  [6] Plaintiff cites *Henry A. v. Willden*, No. 2:10-cv-00528-RCJ-PAL, 2014 U.S. Dist. LEXIS 63129, at *48 (D. Nev.

26  May 7, 2014) to support its request that Defendants' lead counsel be disqualified.  However, that case is easily distinguishable.  In *Henry A.*, a lawyer allegedly approached a party's employee and asked for information about the case "without identifying herself or her organization's involvement in the case."   Other lawyers at the same

27  organization then used that information in the employee's subsequent deposition.  2014 U.S. Dist. LEXIS 63129, at *46-47.  The conduct was alleged to violate Rule 4.2 "and/or" Rule 4.3, and the case does not discuss the managing-speaking agent test or which rule, if either, was violated.  The court ordered an evidentiary hearing and noted that

28  exclusion and disqualification would be appropriate "[i]f the allegations are true" without analyzing the allegations in more detail.  2014 U.S. Dist. LEXIS 63129, at *48.  Plaintiff misleadingly – and incorrectly – describes the court's

C. **Even if the Court were To Find a Violation of Rule 4.2, the Information Obtained by Defendants' in their Counsel's Discussion with Lyons is of the Utmost Importance to the Case, Plaintiff has Not Been Prejudiced in Any Way, and the Sanctions Requested by Plaintiff Should Not be Imposed.**

Even if Plaintiff's complaints with Ms. Buziak's communications with Mr. Lyons were well-founded (which they are not), the Court should nonetheless consider Mr. Lyons' Declaration and deny the Defendants' Emergency Motion for Sanctions. As an initial matter, Plaintiff has not established it would be prejudiced[7] in any way by allowing Mr. Lyons' Declaration to be considered. As noted above, Ms. Buziak did not discuss or obtain any privileged information with/from Mr. Lyons, nor will any harm result from allowing the Declaration to be considered.

More significantly, the evidence contained in Mr. Lyons' Declaration about Ms. Johnson's statements goes directly to key disputed issues in this case:  the question of whether Mr. Callahan reasonably believed he could keep his company-issued cell-phone and whether his retention of that phone supports an inference of misuse of confidential information. Thus it is in the Court's, the parties' and the public's interest for this highly relevant evidence to be allowed, accepted and considered by the Court in its determination of Plaintiff's Motion for Preliminary Injunction.  To determine otherwise and to exclude such key evidence, or to grant Plaintiff's alternative requested relief to deny Defendants' Emergency Motion for Expedited Discovery would permit Plaintiff to continue its strategy to avoid having the actual, true facts come to light.

Plaintiff cannot have it both ways, taking whatever discovery it feels it needs and is entitled to, yet denying Defendants the opportunity to take both formal *and* informal discovery on the same facts and issues. Discovery is and must be a two-way street and the Court should not condone Plaintiff's efforts to deny Defendants their right to investigate the factual background of this dispute and prepare for the hearing on Plaintiff's Motion for Preliminary Injunction.

---

holding in *Henry A.* as "concluding that an appropriate sanction for *ex-parte* contact with an opposing party was the exclusion of any fruits of the violation, plus the disqualification of the attorneys who were involved in the contact." Plaintiff's Motion at 9-10.

[7] The Ninth Circuit has clearly delineated the line between evidence that is harmful to a party from evidence that is prejudicial. In drawing the distinction, the Ninth Circuit has explained that "[p]rejudice does not mean that the [party]'s case is merely damaged, for the more probative the evidence is, the more damaging it is apt to be." *United States v. Bowen*, 857 F.2d 1337, 1341 (9th Cir. 1988). Rather, prejudice arises when the evidence causes the factfinder to base "its decision on something other than the established facts and legal propositions in the case." Id. (citing E. Cleary, McCormick on Evidence § 185 (3d ed. 1984)).

**D.  Plaintiff's Emergency Motion and its Accompanying Declarations Should Be Stricken From the Record.**

Finally, the Court should strike the Emergency Motion and its Declarations for numerous reasons. First, contrary to Plaintiff's position, this is not an "emergency."  Emergency motions are supposed to be rare and proceed in very limited circumstances. *See, e.g.* LR 7-4(b). The Court cautions against the use of emergency motions "because of the numerous problems they create for the opposing party and the court resolving them." *Cardoza v. Bloomin' Brands, Inc.*, 141 F. Supp. 3d 1137, 1140 (D. Nev. 2015) (citing *In re Intermagnetics America, Inc.*, 101 B.R. 191, 193-194 (C.D. Cal. 1989)). Accordingly, emergency motions are only proper when the movant can show (1) that it will be irreparably prejudiced if the Court resolves the motion pursuant to the normal briefing schedule and (2) that the movant is without fault in creating the crisis that requires emergency relief. *Cardoza*, 141 F. Supp. 3d at 1142 (citing *Mission Power Eng'g Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995)).  Plaintiffs have made no such showing here about why the Court must decide this Motion – in which they seek extraordinary relief that will be extremely prejudicial to Defendants – on an emergency basis.

Second, and more substantively, as set forth above, Plaintiff's Motion misstates the applicable governing law, mischaracterizes the facts about Ms. Buziak's communications with Mr. Lyons, and wastes judicial resources on an unfounded and unjustified sanctions motion designed to conceal or obfuscate the actual and highly relevant facts. Further, the Motion and its accompanying declarations contain scurrilous and untrue allegations regarding Ms. Buziak's character, ethics and professionalism. Defendants respectfully submit that not only should the Court deny the Motion in its entirety, it should strike the Motion and its accompanying declarations from the Court's files and the public record.

Due to inflammatory and harassing nature of Plaintiff's Sanctions Motion, Defendants also reserve their right to move for sanctions, including the attorney's fees and costs they have been forced to incur in responding to this unjustified motion.  *See, e.g.*, *Kelly v. CSE Safeguard Insurance Co.*, 2:08-cv-00088-KJD-RJJ, 2009 WL 10692846, at *3 (D. Nev. Sept. 30, 2009) ("The [disqualification] motion [] served no purpose other than to harass, unnecessarily delay, and to

needlessly increase the cost of this litigation.  Further, the motion wasted the time and resources of the court.  A frivolous motion to disqualify is intolerable.  Sanctions may be appropriate under 28 U.S.C. §1927, Fed. R. Civ. P. 11, or the Court's inherent authority").

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Emergency Motions for Sanctions should be denied, and its Motion and accompanying Declarations should be stricken from the Court's records.

DATED:  September 18, 2020

By: _/s/ Kerry E. Kleiman_____
I. Scott Bogatz, Esq.
Nevada Bar No. 3367
Kerry E. Kleiman, Esq.
Nevada Bar No. 14071
**REID RUBINSTEIN & BOGATZ**
300 South 4th Street, Suite 830
Las Vegas, Nevada 89101

Leigh Ann Buziak, Esq. (*Pro Hac Vice*)
Charles S. Marion, Esq.
(*Pro Hac Vice forthcoming*)
Jeremy N. Kolman, Esq. (*Pro Hac Vice*)
Michael A. Stoolman, Esq.(*Pro Hac Vice*)
**BLANK ROME LLP**
One Logan Square
130 North 18th Street
Philadelphia, PA 19103

*Attorneys for Defendants*
*AC Ocean Walk, LLC, Burke, and Callahan*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 18th day of September, 2020 our office attempted to serve a copy of the foregoing **DEFENDANTS' OPPOSITION TO PLAINTIFF'S EMERGECNY MOTION FOR SANCTIONS** upon each of the following parties via CM/ECF electronic service:

Paul T. Trimmer
Jackson Lewis P.C.
300 S. Fourth Street, Ste. 900
Las Vegas, Nevada 89101
Paul.trimmer@jacksonlewis.com

John M. Nolan III
Jackson Lewis P.C.
Three Parkway
1601 Cherry Street, Suite 1350
Philadelphia, PA 19102
J.Michael.Nolan@jacksonlewis.com

*Attorneys for Plaintiff*
*Marina District Development*
*Company, LLC d/b/a Borgata Hotel Casino*
*& Spa*

Unfortunately, due to technological issues caused by maintenance to the CM/ECF system, the undersigned was unable to electronically file and serve the foregoing document. Accordingly, I certify that on the date listed above, I emailed a true and correct copy of the foregoing to the email addresses listed above and to the judicial clerk at David_Chavez@nvd.uscourts.gov per the Court's instruction. I further certify that an identical copy of this Opposition will be filed via the Court's CM/ECF system as soon as the undersigned is able to access it, which is expected to occur the morning of September 21, 2020.

_____/s/ Kerry E. Kleiman_____
An employee of Reid Rubinstein Bogatz

**REID RUBINSTEIN & BOGATZ**
I. SCOTT BOGATZ, ESQ.
Nevada Bar No. 3367
KERRY E. KLEIMAN, ESQ.
Nevada Bar No. 14071
300 South 4th Street, Suite 830
Las Vegas, Nevada 89101
Telephone: (702) 776-7000
Facsimile: (702) 776-7900
sbogatz@rrblf.com
kkleiman@rrblf.com

**BLANK ROME LLP**
LEIGH ANN BUZIAK, ESQ. (*Pro Hac Vice*)
CHARLES S. MARION, ESQ. (*Pro Hac Vice Forthcoming*)
JEREMY N. KOLMAN, ESQ. (*Pro Hac Vice*)
MICHAEL A. STOOLMAN, ESQ. (*Pro Hac Vice*)
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
Telephone: 215.569.5500
Facsimile: 215.569.5555
lbuziak@BlankRome.com
cmarion@BlankRome.com
jkolman@BlankRome.com
mstoolman@BlankRome.com

*Attorneys for Defendant*
*AC Ocean Walk, LLC, William Callahan, and*
*Kelly Ashman Burke*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MARINA DISTRICT DEVELOPMENT COMPANY, LLC d/b/a BORGATA HOTEL CASINO & SPA,<br><br>Plaintiff,<br><br>v.<br><br>AC OCEAN WALK, LLC d/b/a OCEAN CASINO RESORT; WILLIAM CALLAHAN; KELLY ASHMAN BURKE,<br><br>Defendants. | Case No. 2:20-cv-01592-GMN-BNW<br><br><br>**DECLARATION OF LEIGH ANN BUZIAK IN OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR SANCTIONS [ECF NOS. 48, 49]** |

**DECLARATION OF LEIGH ANN BUZIAK**
**IN OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR SANCTIONS**

I, Leigh Ann Buziak, declare as follows:

1.  I make this declaration in Opposition to Plaintiff's Emergency Motion for Sanctions.

2.  I am partner at the law firm of Blank Rome LLP, and I am lead counsel for Defendants AC Ocean Walk, LLC d/b/a Ocean Casino Resort ("Ocean"), William Callahan, and Kelly Ashman Burke. I have intimate knowledge of the facts, legal theories, briefing, and the attorney-client privileged conversations that inform my decision-making in this case.

3.  At 9:07 PM EST, on September 15, 2020, the evening Defendants were required to file their opposition to Plaintiff's motion for preliminary injunction, I called Jason Lyons but did not initially reach him by phone.  A true and correct copy of my phone log with Mr. Lyons cell phone number is attached as **Exhibit A**.

4.  I followed up with a text message to Mr. Lyons at 9:08 PM stating "Hi Jason—this is Leigh Ann Buziak. I'm Bill Callahan's lawyer. Could you give me a quick call? Many thanks." A true and correct copy of the text message is attached as **Exhibit B**.

5.  At 9:12 PM, Mr. Lyons called me back. Our initial conversation lasted a little over two minutes. Ex. A.

6.  Before discussing anything substantive, I explained my role in the case and warned him that, because I represented Mr. Callahan, our conversation was not privileged.

7.  I told Mr. Lyons that, if his employer asked him about the conversation we were having, he would have to answer those questions fully and truthfully. I told him he would have to tell his employer everything he could recall about the conversation we were currently having.

8.  I cautioned him that, if he gave a declaration, he may face consequences from the Borgata. I told Mr. Lyons that he needed to make his own personal decision about whether to provide a declaration. I told him that I was not his lawyer, but as just another human being, he should consider the impact of the decision on his own family and livelihood, and not just helping Bill Callahan.

9.   I told Mr. Lyons that we planned to file the brief later that evening and that I could help him prepare the declaration if he wanted to do so.

10.   I asked Mr. Lyons if he was represented by counsel to which he responded, "should I be?" I told him maybe he should, but I asked him again directly if he actually was represented by a lawyer to make sure. He told me he was not. I told him, again, that I could not advise him, but it might be smart to get a lawyer given the situation he was placing himself into.

11.   Mr. Lyons told me that he would call me back in twenty minutes.

12.   I told him that he did not need to call me back in twenty minutes, and that I understood this was a big decision, which he should not rush. I told him he did not even need to call me back that night, that he could call any time, but that I would be at my desk finishing up the filing.

13.   I did not expect Mr. Lyons to call me back.

14.   I have been involved in numerous cases where clients suggest that third-party witnesses will be willing to give declarations to support their cases. There have been many occasions where I have proceeded to help put together declarations and the third party is ready to sign. At the last minute, the third party has second thoughts. It is natural. When a third-party witness is faced with the final decision to sign a statement under penalty of perjury and involve themselves in contentious litigation, it is a big decision. It is an even bigger decision to testify against your employer to tell the truth.

15.   At 9:27 PM, Mr. Lyons called me back and we discussed (1) what Melonie Johnson said about Bill Callahan's phone at the meeting and (2) whether he could recall personally telling Bill Callahan what had occurred at the meeting with Melonie Johnson. Ex. A.

16.   I listened to Mr. Lyons tell his recollection of the meeting and edited the declaration to conform with Mr. Lyons' statements.

17.   I asked Mr. Lyons if he told Bill Callahan personally about what Melonie Johnson said at the meeting. He could not specifically recall, and decided that he did not want to put anything about such a conversation in the declaration since his recollection was not completely

clear.

18.  I read and re-read the text of the declaration to him several times until he was comfortable that it was true and correct. I told him that the language needed to be 100% true and correct and that he would be signing under penalty of perjury. I explained that it was likely he was going to be asked to testify about the statement in these proceedings under oath and he needed to understand that.

19.  That conversation lasted 7 minutes and 37 seconds. Ex. A.

20.  At 9:44 PM, ten minutes after our second conversation had ended, Mr. Lyons texted my cell phone: "Not received yet." Ex. B.

21.  At 9:45 PM, I emailed the declaration to Mr. Lyons. A true and correct copy of the email is attached as **Exhibit C**.

22.  My email made clear that the declaration would be filed with Court and stated "Good evening Jason: please see attached and note that the phone numbers will be redacted in public filings and will not be published." *Id.* The non-hearsay evidence of Mr. Lyons' phone number would show that Mr. Callahan called Mr. Lyons immediately after speaking with one of the Borgata's customers at issue to tell Mr. Lyons that the customer was coming to the Borgata.

23.  Mr. Lyons' declaration was a critical piece of evidence to put before the Court in Defendants' opposition to Plaintiff's motion for preliminary injunction for all of the reasons explained in that brief.

24.  Even though the hour was late when I received the declaration, I thought there might still be time to file it with the Court before the deadline instead of a supplemental filing the day after. I briefly raised the idea of having a courier pick up Mr. Lyons' signed declaration. We quickly dismissed that idea due to the late hour. I recall saying something to Mr. Lyons like, what am I thinking, that would be crazy. Instead, I asked Mr. Lyons if he could send me a photograph of the signed declaration.

25.  At 9:56 PM, Mr. Lyons texted me a photograph of the signature page and asked

"Sufficient?" Ex. B.

26.  At 9:58 PM. Mr. Lyons sent me an email stating "Sent photo to your phone!" A true and correct copy of the email is attached as **Exhibit D**.

27.  I did not tell Mr. Lyons that he would be "subpoenaed" if he did not provide a declaration. I did not use the word "subpoena" during our conversations. It would be contrary to my practice, principles, morals and personal ethics – let alone the Rules of Professional Conduct, the Federal Rules of Civil Procedure, or the Local Rules of this Court – to ever threaten someone in as precarious a position as Mr. Lyons is in with a subpoena.

28.  I was seeking the truth, and allowing a fact witness the opportunity to tell the truth, when perhaps his employer did not want him to because it was not in the employer's interest for him to do so.

29.  Mr. Lyons seemed nervous in the first conversation that we had, and, as mentioned, I did not expect him to call me back. When he returned my call, he sounded resolved that he wanted to proceed and stayed on the phone while I edited the declaration. At no time did he seem at all uncomfortable and expressed no concerns, other than that telling the truth might cost him his job. Based on our conversation, my testing of the specific language of the declaration with Mr. Lyons, the time he took to consider our initial conversation and still call me back, and the fact that he did not want to state a fact that he could not completely remember, I believed that Mr. Lyons was telling the truth and the declaration needed to be filed with the Court.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

                                                    /s/ Leigh Ann Buziak
Dated:  September 18, 2020                    LEIGH ANN BUZIAK

# Exhibit A

# Phone Log



(609) 970-███

Deptford, NJ

Add note ✎

**History**

↙ September 15
Received multimedia message

↙ September 15
Received message
Not received yet

↙ Sep 15 9:27 PM
Incoming call, 7 mins 37 sec

↙ Sep 15 9:12 PM
Incoming call, 2 mins 8 sec

September 15

\+ Add          ⌣ Share          ⊘ Block



History

**September 15**
Received multimedia message

**September 15**
Received message
Not received yet

**Sep 15 9:27 PM**
Incoming call, 7 mins 37 sec

**Sep 15 9:12 PM**
Incoming call, 2 mins 8 sec

**September 15**
Sent message
Hi Jason - this is Leigh Ann Buziak, I'm Bill Call

**Sep 15 9:07 PM**
Outgoing call, 0 mins 7 sec

+        Add
Share
🚫 Block

# Exhibit B

# Text Messages

3:40

< MARINA DISTRI...

Add to contacts     Block number

Tuesday, September 15, 2020

Hi Jason - this is Leigh Ann Buziak, I'm Bill Callahan's lawyer. Could you give me a quick call? Many thanks.

9:08 PM

 Not received yet

9:44 PM



Sufficient?     MMS
9:56 PM

# Exhibit C

# Email from Leigh Ann Buziak

████████████

**From:**         Buziak, Leigh Ann
**Sent:**         Tuesday, September 15, 2020 9:45 PM
**To:**          jlyons131@comcast.net
**Subject:**     Borgata v. Ocean - Declaration of Jason Lyons
**Attachments:** (123834756)_(1)_Borgata v. Ocean - Declaration of Jason Lyons.DOCX

Good evening Jason: please see attached and note that the phone numbers will be redacted in public filings and will not be published.

**Leigh Ann Buziak** | BLANKROME
One Logan Square | 130 North 18th Street | Philadelphia, PA 19103
O: 215.569.5386 | M: 267.973.8945 | lbuziak@blankrome.com
BLANK ROME Coronavirus/Covid-19 Task Force Page

**REID RUBINSTEIN & BOGATZ**
I. SCOTT BOGATZ, ESQ.
Nevada Bar No. 3367
KERRY E. KLEIMAN, ESQ.
Nevada Bar No. 14071
300 South 4th Street, Suite 830
Las Vegas, Nevada 89101
Telephone: (702) 776-7000
Facsimile: (702) 776-7900
sbogatz@rrblf.com
kkleiman@rrblf.com

**BLANK ROME LLP**
LEIGH ANN BUZIAK, ESQ. (*Pro Hac Vice forthcoming*)
JEREMY N. KOLMAN, ESQ. (*Pro Hac Vice forthcoming*)
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
Telephone: 215.569.5500
Facsimile: 215.569.5555
Email:  lbuziak@BlankRome.com
Email:  jkolman@BlankRome.com

*Attorneys for Defendant*
*AC Ocean Walk, LLC, William Callahan, and*
*Kelly Ashman Burke*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MARINA DISTRICT DEVELOPMENT COMPANY, LLC d/b/a BORGATA HOTEL CASINO & SPA,<br><br>Plaintiff,<br><br>v.<br><br>AC OCEAN WALK, LLC d/b/a OCEAN CASINO RESORT; WILLIAM CALLAHAN; KELLY ASHMAN BURKE,<br><br>Defendants. | Case No. 2:20-cv-01592-GMN-BNW<br><br>**DECLARATION OF JASON LYONS** |

1

2

**DECLARATION OF JASON LYONS**

3   I, Jason Lyons, declare as follows:

4         1.   My name is Jason Lyons. I am the Vice President of Relationship Marketing for

5   the Borgata.

6         2.   I was in a meeting on Monday, July 13, 2020 with Kelly Burke, Hugh Turner, Tim

7   Stafford, and the President and Chief Operating Officer, Melonie Johnson.

8         3.   At that meeting, Kelly Burke specifically asked Melonie Johnson what we should

9

10  do about Bill Callahan's phone and calls because he had resigned. Melonie Johnson's response

11  was, after so many years at the Borgata, Bill could keep his phone.

12        4.   My cell phone number is 609-970-███ and my work phone number is 609-317-

13  ███.

14

15        I declare under penalty of perjury under the laws of the United States that the foregoing is

16  true and correct.

17

18     Dated:  September 15, 2020                   _____

                                              JASON LYONS

19

20

21

22

23

24

25

26

27

28

# Exhibit D

# Email from Jason Lyons

**From:** Jason L. <jlyons131@comcast.net>
**Sent:** Tuesday, September 15, 2020 9:58 PM
**To:** Buziak, Leigh Ann
**Subject:** Re: Borgata v. Ocean - Declaration of Jason Lyons

Sent photo to your phone!

On 09/15/2020 9:45 PM Buziak, Leigh Ann <lbuziak@blankrome.com> wrote:

Good evening Jason: please see attached and note that the phone numbers will be redacted in public filings and will not be published.

**Leigh Ann Buziak** | BLANKROME
One Logan Square | 130 North 18th Street | Philadelphia, PA 19103
O: 215.569.5386 | M: 267.973.8945 | lbuziak@blankrome.com
BLANK ROME Coronavirus/Covid-19 Task Force Page

*********************************************************************************************

This message and any attachments may contain confidential or privileged information and are only for the use of the intended recipient of this message. If you are not the intended recipient, please notify the Blank Rome LLP or Blank Rome Government Relations LLC sender by return email, and delete or destroy this and all copies of this message and all attachments. Any unauthorized disclosure, use, distribution, or reproduction of this message or any attachments is prohibited and may be unlawful.

*********************************************************************************************